UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICK NJOROGE,

                              Plaintiff,

        v.

VOCATIONAL TRAINING
INSTITUTES, INC. d/b/a PIMA
MEDICAL INSTITUTE, an Arizona
corporation,

                              Defendant.

No. 2:16-cv-00951-RAJ

ORDER

        This matter comes before the Court on Defendant Pima Medical Institute's
("Defendant" or "Pima") Motion for Summary Judgment of Plaintiff's claims.  Dkt.
# 22.  Plaintiff Patrick Njoroge opposes the Motion.  Dkt. # 25.  For the reasons
stated below, Defendant's Motion is **GRANTED in part** and **DENIED in part.**

I.      **BACKGROUND**

        A.  <u>Defendant's Motion to Strike Plaintiff's Declaration</u>

        As a preliminary matter, Defendant argues that Plaintiff alleges facts in his
Response that do not meet the requirements of Federal Rule of Civil Procedure
56(c).  Several of the factual assertions in Plaintiff's Response are only supported by
Plaintiff's own declaration.  Dkt. # 23.  Rule 56(c) requires that factual positions in a
motion for summary judgment be supported by citations to part of the record,
including affidavits or declarations.  These affidavits or declarations must be "made
on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c).

Contrary to Defendant's assertion, several of the facts alleged in Plaintiff's declaration appear to be based on his personal knowledge and alleged experiences, not on information from others. Defendant also argues that Plaintiff's declaration cannot be the basis to create a material issue of fact because several of the alleged facts conflict with Plaintiff's deposition testimony, were not testified to in his deposition, and conflict with Dr. Corsilles-Sy's declaration. By asking the Court to determine the truth of Plaintiff's declaration through comparison to his deposition testimony and Dr. Corsilles-Sy's declaration, Defendant is asking the Court to make a credibility determination. "In resolving summary judgment motions, a court must not weigh the evidence, make credibility determinations, or draw inferences from the facts adverse to the non-moving party." *His & Her Corp. v. Shake-N-Go Fashion, Inc*., 572 F. App'x 517, 518 (9th Cir. 2014); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."); *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1149 (9th Cir. 2002). As Plaintiff's credibility is more appropriately considered at trial, the Court declines to make that determination here.

Defendant also argues that Plaintiff's declaration must be struck because it is based on inadmissible hearsay. Plaintiff relies on several statements he alleges were made by Pima instructors and other personnel. Defendant argues that Plaintiff must lay a foundation in order to rely on statements made by Pima personnel as statements of a party opponent. However, "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at

trial, as long as the party satisfies the requirements of Federal Rules of Civil

Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).

The Court makes no judgment on whether Plaintiff will be able to lay a foundation

for these statements at trial, but will consider statements that meet the requirements

of Rule 56 for the purposes of this Motion.  To the extent that Plaintiff's declaration

is based on inadmissible hearsay, it will not be considered for the purposes of this

Motion.

Finally, Defendant requests that the Court strike any speculative and

conclusory allegations not supported by the record.  To the extent that Plaintiff's

declaration makes any speculative or conclusory allegations, it will not be

considered here.

B.  Plaintiff's Academic History

Plaintiff, Patrick Njoroge, is black and originally from Kenya.  Dkt. # 1 ¶ 3.1.

He is a resident of King County, Washington.  *Id.* at ¶ 2.1.  Pima is a medical career

college that is incorporated in Arizona but conducts business in King County,

Washington.  Dkt. # 23 Ex. A.  In Fall of 2012, Plaintiff enrolled in the Occupational

Therapy Assistant ("OTA") program at Pima.  Dkt. # 25.  At this time, Plaintiff

completed an Enrollment Agreement.  Dkt. # 23 Ex. C.  The Enrollment Agreement

stated Pima's tuition refund policy.  *Id.*  Under this policy, Pima retains 100% of

enrollment period charges if Plaintiff withdraws or is terminated from the program

during "greater than 50% through or through the remainder of the enrollment

period."  Dkt. # 23 Exs. C, J

According to the policies and procedures of the OTA program, failure of

three or more courses may result in termination from the program.  Dkt. # 23 Ex. F.

If a student fails an OTA designated course, the student may retake the course one

time.  *Id.*  Failure of that course a second time results in termination from the OTA

program.  *Id.*  If a student is terminated from the OTA program, that student can

apply to re-enroll in the program. *Id.* After re-enrollment, failure of an OTA designated course will result in termination from the OTA program. *Id.* At that time, the student may not be eligible for another re-enrollment. *Id.*

At some point after Plaintiff began classes at Pima, he submitted an essay about his heritage titled, "Kikuyu Culture". Dkt. # 26. Plaintiff alleges that after he submitted his essay, instructors at Pima began treating him differently. *Id.* During Plaintiff's first term, he failed three OTA designated courses and was withdrawn from the program. Dkt. # 23 Ex. H; Dkt. # 23 Ex. E. Plaintiff testified in his deposition that he failed these courses due to illness. Dkt. # 23 Ex. E. Plaintiff made no claims of discrimination at that time. In May 2013, Plaintiff was permitted to re-enroll in the OTA program to retake the three courses he initially failed. Dkt. # 23 Ex. I. At the time of re-enrollment, Plaintiff executed another Enrollment Agreement. Dkt. # 23 Ex. J. During this second enrollment, Plaintiff passed the courses he failed during his first term. *Id.*

During the third term of Plaintiff's second enrollment at Pima, Plaintiff failed another course. *Id.*; Dkt. # 25. Plaintiff testified that he failed the class because he was "emotionally disturbed" because his mother was sick. Dkt. # 23 Ex. E. On May 23, 2014, Plaintiff met with the OTA program director, Dr. Cecille Corsilles-Sy. During that meeting, Dr. Corsilles-Sy informed Plaintiff that he was terminated from the OTA program because he failed four courses. *Id.* On May 27, 2014, Plaintiff appealed his termination from the OTA program. *Id.* In his appeal letter, Plaintiff stated his belief that, according to Pima policies, he should be given the opportunity to retake his failed fourth course. Plaintiff's letter also included a quote from the affirmative action policy in the Pima Medical Institute Catalogue, but did not contain any specific allegations of discrimination. Dkt # 23 Ex. K.

On June 12, 2014, Plaintiff met with a panel regarding his appeal. During the hearing, Plaintiff was asked whether he felt discriminated against. Plaintiff stated

that he felt discriminated against because Dr. Corsilles-Sy terminated him without giving him another opportunity to continue with the program. Dkt. # 23 Ex. E. Plaintiff stated in his deposition that he believed he had "three chances for the whole program," or, of the total number of semesters for the OTA program, Plaintiff had three opportunities to pass all of his courses. *Id.* After this hearing, Plaintiff was allowed to repeat the course that he failed. Dkt. # 23 Ex. L. Plaintiff retook his failed course in June 2014, and began his Fall 2014 term in September 2014. Dkt. # 23 Ex. H.

In Defendant's notes from the hearing, there is a handwritten note that states, "[n]eed a statement from Student on what or how he found discrimination in the OTA or PD decision to terminate." *Id.* The notes are signed by Kristi Shimada, Associate Director at Pima, and Dr. Corsilles-Sy. *Id.* After the panel hearing, Ms. Shimada prepared a written statement regarding Plaintiff's discrimination claims. Dkt. # 22. The statement reads, in part: "I spoke to Patrick regarding his reference. He does not feel that the OTA program has discriminated against him according to the Affirmative Action statement. He wanted to reiterate that Pima Medical Institute policy complied with the Affirmative Action Act." Dkt. # 22; Dkt. # 24 Ex. M. On June 18, 2014, Plaintiff signed the statement. *Id.*

On September 29, 2014, Plaintiff received an email from Karen St. Charles, one of his instructors, informing him that Fall 2014 term classes had begun and that she noted that he was not in class. Dkt. # 26 Ex. B. Plaintiff alleges that he spoke to Ms. St. Charles the next day and explained that he missed his first class because he did not receive any information about his class schedule. Plaintiff also alleges that Ms. St. Charles indicated that Plaintiff's name was not in the system and assured him that his absence the day before would not be "counted against him". Dkt. # 26 ¶ 19. During Plaintiff's Fall 2014 term, he alleges that he spoke to instructors in three of his courses about his grades, which were posted on Pima's internal online system:

Ms. Keith, Ms. Loi, and Ms. Keeny.  Dkt. # 26.  Plaintiff believed that these grades were incorrectly noted.  On all three occasions, Plaintiff alleges that the instructors somehow attributed his incorrect grades to Dr. Corsilles-Sy, either because she would not change a grade, or because she was the person who entered the grade into the system.  Dkt. # 26.

On December 15, 2014, Plaintiff alleges that he spoke to Campus Director, Bob Panerio, and explained that his grades were incorrectly posted, that after bringing these errors to the attention of his instructors they began giving his assignments below-average grades, and that Ms. Keeny told him that he lacked critical thinking because English was his second language.  Dkt. # 26.  Plaintiff further alleges that Mr. Panerio then told Plaintiff that he wanted to investigate these claims.  *Id.*  The following month, Plaintiff followed-up with Mr. Panerio.  Mr. Panerio allegedly told Plaintiff, "It looks you have a problem with Dr. Corsilles-Sy Cecilles."  *Id.*  After this conversation Mr. Panerio did not speak to Plaintiff about this matter again.  *Id.*

On February 9, 2015, Plaintiff received an email from Dr. Corsilles-Sy, stating that he was terminated from the OTA program because he received failing grades in two more courses during his Fall 2014 term.  Dkt. # 23 Ex. N.  After receiving this information, Plaintiff met with Ms. Shimada, Dr. Corsilles-Sy, and the instructors of those two courses.  Dkt. # 23 Ex. E.  At this meeting, one of Plaintiff's instructors, Ms. Keith, realized that she had made a grading error on one of Plaintiff's papers.  After Ms. Keith regraded Plaintiff's paper, he received a passing grade in that course.  *Id.*  After Plaintiff's grades were adjusted, he still had a failing grade in one of his courses, Pediatrics, and his termination from the OTA program was upheld.  *Id.*

On June 22, 2016, Plaintiff filed a Complaint against Defendant for race discrimination, retaliation, violation of the Equal Protection Clause of the Fourteenth

Amendment, and other state law claims.  Dkt. # 1.

## II.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).  Credibility determinations and the weighing of the evidence are jury functions, not those of a judge.  *Anderson*, 477 U.S. at 255.

However, the court need not, and will not, "scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").  The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v.*

*Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

Uncorroborated allegations and "self-serving testimony" will not create a genuine

issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th

Cir. 2002); *T.W. Elec. Serv. V. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th

Cir. 1987).

## III.     DISCUSSION

### A.     Race Discrimination in Violation of State and Federal Law

Title VI provides that "[n]o person in the United States shall, on the ground

of race, color, or national origin, be excluded from participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." 42 U.S.C. § 2000d. "Title VI prohibits only

intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

Washington's Law Against Discrimination ("WLAD") prohibits discrimination in

public accommodation, on the basis of race or national origin. Public

accommodation includes any place where the sale of goods, merchandise, services,

or personal property is transacted. RCW 49.60.030.

#### 1.  Disparate Treatment

The Court analyzes Plaintiff's Title VI and state law disparate treatment claims

under the same burden shifting framework established in *McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973). *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th

Cir. 2014) ("We now join the other circuits in concluding that *McDonnell Douglas*

also applies to Title VI disparate treatment claims."); *Spry v. Peninsula Sch. Dist*., 193

Wash. App. 1015 (2016) (applying the *McDonnell Douglas* shifting framework to

WLAD claims). To satisfy his burden on the race discrimination claims, a plaintiff

must establish a prima facie case of racial discrimination. *McDonnell Douglas Corp.*,

411 U.S. at 802.

"The requisite degree of proof necessary to establish a prima facie case . . . on

summary judgment is *minimal* and does not even need to rise to the level of a preponderance of the evidence." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).  To avoid summary judgment, however, plaintiffs "must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).  Plaintiffs must produce "specific, substantial evidence of pretext." *Id.*

If a plaintiff successfully establishes a prima facie case for race discrimination, the burden of production shifts to the defendant to show a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp.*, 411 U.S. at 802.  The burden then shifts back to the plaintiff to show that the defendant's reasons were pre-textual. *Id.* at 804.  Despite this burden shifting, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated remains at all times with the plaintiff. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000); *Norris v. City of San Francisco*, 900 F.2d 1326, 1329 (9th Cir. 1990).

### a. <u>Federal Disparate Treatment Claim</u>

Under Title VI, unlawful discrimination is presumed if the plaintiff can show that: (1) he belongs to a protected class; (2) he was performing according to the Defendant's legitimate expectations; (3) he suffered an adverse action; and (4) other students similarly situated were treated more favorably. *McDonnell Douglas Corp.*, 411 U.S. at 802; *see Darensburg v. Metropolitan Transp. Com'n*, 636 F.3d 511, 519 (9th Cir. 2011) ("We look to Title VII disparate impact analysis in analyzing Title VI claims.").  However, the Ninth Circuit has recognized that a plaintiff attempting to establish a prima facie case of discrimination "must offer evidence that 'give[s] rise to an inference of unlawful discrimination,' **either** through the framework set forth in *McDonnell Douglas Corp. v. Green* **or** with direct or circumstantial

evidence of discriminatory intent." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (citations omitted) (emphasis added); *see Rashdan*, 764 F.3d at 1183. Evidence of discriminatory motive can be direct or indirect. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Rashdan*, 764 F.3d at 1182 (9th Cir. 2014) (quoting *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2003)).

Plaintiff offers several factual allegations as evidence of Defendant's discriminatory intent. Plaintiff alleges that instructors at Pima treated him in a "cold and hostile manner" after he submitted his essay on Kikuyu culture in 2012[1]. Plaintiff also alleges that Ms. Keeny told him that he lacked critical thinking because English was his second language, that Dr. Corsilles-Sy told him that he should be an English as a Second Language ("ESL") student in a mocking manner, and that Dr. Corsilles-Sy purposely recorded his grades incorrectly so that he would be terminated from the OTA program. Ms. Keeny was the instructor in two of the courses that Plaintiff failed and Plaintiff alleges that she made grading errors in at least one of those courses. Both failing grades contributed to both of Plaintiff's terminations from the OTA program in 2014 and 2015. The comments made by Ms. Keeny and Dr. Corsilles-Sy support an inference of discriminatory animus, and both instructors were allegedly responsible for the errors in Plaintiff's grades. Plaintiff carries only a minimal burden to establish his prima facie case, "a burden that does not even rise to the level of a preponderance of the evidence." *Aragon*, 292 F.3d at 659. Plaintiff has met that burden.

  i. Legitimate, Nondiscriminatory Reason and Pretext

[1] Plaintiff includes Dr. Corsilles-Sy among the instructors that responded negatively to his essay. However, Defendant argues that Dr. Corsilles-Sy did not begin working at Pima until one year after Plaintiff submitted his essay on Kikuyu culture and that she was not aware of the existence of this essay until after Plaintiff filed this lawsuit. Dkt. # 27; Dkt. # 29.

As Plaintiff has established a prima facie case for race discrimination, the Court will now consider whether Defendant can articulate a legitimate, nondiscriminatory reason for terminating Plaintiff from the program. Defendant's burden at this stage is one of production, not persuasion. *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1123–24 (9th Cir. 2000).

Defendant argues that Plaintiff was terminated from the OTA program for poor academic performance. Defendant produced pages from Pima's catalog, the OTA student handbook detailing, and the OTA Program catalog detailing Pima's policy and procedures, Plaintiff's two Enrollment Agreements, excerpts from Plaintiff's deposition, a copy of Plaintiff's transcript, an email exchange regarding Plaintiff's changed grades, as well as a copy of a Professional Performance Pink Slip that Plaintiff received for plagiarism. Dkt. # 23 Exs. B, C, E, F, G, H, J, O, and P. As noted above, OTA program policy states that failure of three or more courses may result in termination from the program. Dkt. # 23 Ex. F. If a student is terminated from the OTA program, that student can apply to re-enroll in the program. *Id.* After re-enrollment, failure of an OTA designated course will result in termination from the OTA program. *Id.* At that time, the student may not be eligible for another re-enrollment. *Id.*

It is undisputed that Plaintiff failed three OTA designated courses during his first semester at Pima. Dkt. # 23 Ex. H. Plaintiff then withdrew from the program and re-enrolled. It is also undisputed that Plaintiff failed a fourth OTA designated course after that re-enrollment. *Id.* Plaintiff does not allege that these four failing grades are incorrect. Dkt. ## 25, 26. Setting aside the disputed fifth failed course, Pediatrics, that led to Plaintiff's second termination, according to OTA policy, Plaintiff's academic record provided grounds for termination from the OTA program. Even if Plaintiff's failing grade in Pediatrics was calculated incorrectly, Plaintiff failed "three or more courses" and was terminated for it. Defendant has

met its burden to show a legitimate, nondiscriminatory reason for terminating Plaintiff from the program.

Plaintiff carries the ultimate burden of persuasion to establish that Defendant's proffered reason for terminating Plaintiff was merely pretext for a decision that was actually based on racial animus. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507–08 (1993). Plaintiff has not met this burden. Plaintiff argues that Dr. Corsilles-Sy was intentionally altering his grades in order to terminate him from the program and that his eventual termination was based on two of those incorrectly entered or calculated grades. Plaintiff provides no evidence, other than his declaration, to support his theory that his termination was based on racial animus.

In addition to Plaintiff's declaration, he submitted his transcript, emails from Ms. St. Charles indicating that he was not present at the first day of class and listing his classes for the semester, an email from Dr. Corsilles-Sy notifying Plaintiff of his 2015 termination, an email from Yukari Tojo noting that Plaintiff's grades would be adjusted, an email from Dr. Corsilles-Sy detailing Plaintiff's adjusted grades, and the syllabus from Plaintiff's Pediatrics class. Dkt. # 26 Exs. A-G. None of these documents provide the "specific and substantial" evidence required to overcome Defendant's proffered reason for Plaintiff's termination. *Aragon*, 292 F.3d at 659. At most, the provided evidence supports the contention that his grades were incorrectly calculated and corrected. Although Plaintiff's declaration states that these incorrectly calculated grades were intentional and evidence of racial discrimination, this declaration falls short of the substantial evidence required to establish pretext. Other than his subjective interpretation of OTA policy, Plaintiff provides no rebuttal for Defendant's argument that they had legitimate grounds for his termination prior to any alleged incorrect grades. This interpretation is not supported by evidence. Accordingly, the Court **GRANTS** Defendant's Motion with regard to Plaintiff's Title VI race discrimination claim.

b. _State Law Disparate Treatment Claim_

To establish a prima facie showing of race or national origin discrimination in public accommodation under Washington state law, a plaintiff must show: 1) the plaintiff is a member of a protected class; 2) the defendant's establishment is a place of public accommodation; 3) the defendant discriminated against plaintiff by not treating him in a manner comparable to the treatment it provides to persons outside that class; and 4) the protected status was a substantial factor causing the discrimination. _Demelash v. Ross Stores, Inc._, 105 Wash. App. 508, 525, 20 P.3d 447, 456 (2001). The parties do not dispute whether Pima is a place of public accommodation and Plaintiff is clearly a member of a protected class. At issue is whether Defendant treated Plaintiff in a manner comparable to the treatment it provided students outside of his protected class, and whether Plaintiff's protected status was a substantial factor causing the discrimination.

Plaintiff provides no evidence and no argument that he was treated differently than any other similarly situated student. Plaintiff does not make any allegations regarding any other students in his Complaint, and provides only conclusory arguments in his Response. None of the evidence submitted by Plaintiff supports any claim that he was treated differently from any other student. Plaintiff merely states that he was "treated differently than others" and argues that the alleged comments made by Dr. Corsilles-Sy and Ms. Keeny about his English language skills and critical thinking provide proof that he was treated differently. Dkt. # 25. These arguments do not meet even the minimal level of evidence required to establish a prima facie case of discrimination. Even if Plaintiff could show that Defendant did not treat him in a manner comparable to the treatment it provided to persons outside of his protected class, he did not show that his protected status was a substantial factor causing the discrimination.

Plaintiff argues that he first began experiencing discrimination after he submitted an essay on Kikuyu culture. As noted above, Dr. Corsilles-Sy stated in her declaration that she did not begin working at Pima until one year after Plaintiff's essay was submitted, and was unaware of this essay until Plaintiff filed this lawsuit. Other than the comments made by Dr. Corsilles-Sy and Ms. Keeny, there is no other evidence that any alleged discrimination was due to Plaintiff's race or national origin. These comments, while offensive, are not sufficient to establish that Plaintiff's protected status was a substantial factor in causing Dr. Corsilles-Sy or Ms. Keeny to give him an undeserved failing grade or to manipulate his grades in any way. Defendant's Motion as to Plaintiff's WLAD disparate treatment claim is **GRANTED.**

   *2. Hostile Educational Environment*

   To establish a hostile educational environment claim under Title VI, Plaintiff must show that: (1) there was a racially hostile environment; (2) the school had notice of the problem; and (3) the school failed to respond adequately to redress the racially hostile environment. *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033 (9th Cir. 1998). A "racially hostile environment" is "one in which racial harassment is severe, pervasive or persistent so as to interfere with or limit the ability of an individual to participate in or benefit from the services, activities or privileges provided by the recipient." *Id.* (citation omitted). Summary judgment of a hostile educational environment claim is appropriate if the plaintiff fails to raise a triable dispute as to whether defendant created a racially hostile environment or had any discriminatory intent. *Nkwuo v. Angel*, 693 F. App'x 696, 697 (9th Cir. 2017).

   Plaintiff alleges that he was subject to a racially hostile educational environment, but offers little evidence to show that he was subject to racial harassment so "severe, pervasive or persistent" that it interfered with his ability to participate in or benefit in his education. Plaintiff claims that his essay on Kikuyu

culture caused "fury" and "hostility" among the instructors in the OTA program. However, he does not offer any evidence of this hostility or any details of any harassment that occurred after he submitted his essay and the main actor that he accuses of harassment, Dr. Corsilles-Sy, was not aware of this essay at the time the alleged harassment occurred. Plaintiff also alleges that Dr. Corsilles-Sy and Ms. Keene made racially offensive comments to him. However, two comments are not sufficient to establish that Plaintiff was subject to a racially hostile environment. Plaintiff was unable to recall any other statements he believed were inappropriate due to his race and/or national at his deposition, and makes no further allegations of offensive comments in his Response, declaration, or Complaint. Dkt. ## 1, 25, 26; Dkt. # 23 Ex. E. In fact, Plaintiff specifically states that he is not claiming that any other instructors other than Dr. Corsilles-Sy and Ms. Keeny were hostile to him. Dkt. # 25 at 22. Plaintiff fails to raise an issue of triable dispute as to whether Defendant created a racially hostile educational environment. To the extent that Plaintiff alleges a hostile educational environment claim under Title VI, Defendant's Motion is **GRANTED.**

      B.  <u>Retaliation in Violation of State and Federal Law</u>

To establish a prima facie claim for retaliation under Title VI, Plaintiff must show: (1) he engaged in a statutorily protected activity, (2) defendant took some adverse action against him, and (3) there is a causal connection between the protected activity and the adverse action. *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003). The WLAD prohibits retaliation for engaging in a protected activity. RCW 49.60.210. Washington courts look to federal law when analyzing WLAD retaliation claims. *See Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002).

Plaintiff claims that he engaged in statutorily protected activity when he filed an appeal from his May 2014 termination. Plaintiff cited to Pima's affirmative

action policy in his appeal letter and stated that he felt discriminated against during his appeal hearing. Defendant does not dispute that Plaintiff engaged in a statutorily protected activity and was subject to an adverse action. Defendant only disputes whether there is a causal link between Plaintiff's complaints of discrimination and his final termination in February 2015 because of the length of time that passed between the events. From the time Plaintiff filed his appeal to his final termination from the OTA program, Plaintiff alleges that he was subject to several grading errors and that these grading errors eventually led to his termination. When Plaintiff was terminated in 2015, Dr. Corsilles-Sy informed him that he received failing grades in two courses. One or more errors were discovered in Plaintiff's grades and at least one of his failing grades was adjusted. Dkt. # 23 Ex. O. After adjustments were made to Plaintiff's grades, he still had a failing grade in one course, Pediatrics, and his termination remained in effect. *Id.*

Plaintiff argues that these grading errors were in retaliation for his appeal and claims of discrimination. Specifically, Plaintiff argues that his remaining failing grade was due to an intentional error made in order to terminate him from the program. Plaintiff received a "zero" on one of his "reflection papers" in Pediatrics. According to Plaintiff, his grade in Pediatrics was supposed to be calculated as follows: "tests/quizzes as twenty percent, lab skills at twenty five percent, homework as thirty percent, PPS as ten percent and final exam as fifteen percent." Dkt. # 26. Plaintiff contends that his reflection paper grade was purposely weighted incorrectly, and when weighted correctly, he would no longer have a failing grade in Pediatrics. Dkt. # 25.

In support of these contentions, Plaintiff cites to the Pediatrics syllabus. The syllabus details what actions would result in deductions, including situations where there were assignments required for participation in labs: "In cases where the assignment is not ready for presentation for lab, the student will receive 50% off of

his or her lab score for not presenting during lab in addition to the 50% deduction for the assignment itself." Dkt. # 26 Ex.G. Defendant notes in passing that Plaintiff's reflection paper grade carried over to the related lab skills grade, but provides no clear explanation as to the grading structure in this particular course. Dkt. # 22 at 8. It is possible that Plaintiff's paper was related to a lab, but there is no clear indication what assignments are considered as "lab skills" assignments. The syllabus and the grade breakdown for Plaintiff's final grade in Pediatrics list the paper in question as homework, however neither document explains how the assignments and classwork were weighted or how Plaintiff's final grade was calculated. Dkt. # 23 Ex. P; Dkt. # 26 Ex. G. Plaintiff has shown that there is a genuine issue of material fact as to the casual connection between Plaintiff's statutorily protected activity and his termination from the OTA program. Therefore, Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's federal and state law retaliation claim.

   C. <u>Breach of Contract</u>

   Plaintiff brings a breach of contract claim against Defendant for failing to provide him educational services, grade him fairly, and abide by its own policies. Dkt. 1. Under Washington state law, contract may be oral or written, and may be implied. *Hoglund v. Meeks*, 139 Wash.App. 854, 870, 170 P.3d 37 (2007). Parties must "objectively manifest their mutual assent and the terms assented to must be sufficiently definite." *Keystone Land & Dev. Co. v. Xerox Corp.*, 152 Wash.2d 171, 177–78, 94 P.3d 945 (2004). The party asserting the existence of a contract bears the burden of proving each essential element, including the existence of a mutual intention. *Becker v. Washington State Univ.*, 165 Wash. App. 235, 246 (2011). It is "generally accepted that the relationship between a student and a university is primarily contractual in nature." *Marquez v. Univ. of Washington*, 32 Wash. App. 302, 305 (1982). The nature and terms of this type of agreement are usually implied,

with specific terms to be found in university publications. *Id.* "[T]he standard is that of reasonable expectations—what meaning the party making the manifestation ... should reasonably expect the other party to give it." *Id.* at 306; *Becker*, 165 Wash. App. at 246–47.

It is reasonable for Plaintiff to expect that Defendant provide him with an education in accordance with the policies and procedures outlined in Pima's catalog. Dkt. # 23 Ex. B. Plaintiff alleges that Defendant violated its policy "not to discriminate against any person on the basis of race, color, religion, creed, national origin, sex, age, marital or parental status or disability in all of its educational and employment programs and activities, its policies, practices and procedures." Dkt. # 23 Ex. B. Plaintiff also argues that he was graded unfairly due to discrimination. As noted above, Plaintiff fails to establish that Defendant discriminated against him either through disparate treatment, or through a hostile educational environment. Neither can Plaintiff show that Defendant was in violation of its policies and procedures with regards to his termination. Plaintiff argues that he was terminated in violation of OTA program policy, but this argument is based on his subjective interpretation of that policy, and not on the policy itself. Defendant had adequate grounds to terminate Plaintiff in accordance with its policies and procedures. Plaintiff fails to establish a genuine issue of material fact as to whether Defendant breached any contract, thus, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's breach of contract claim**.**

D. Unjust Enrichment

Plaintiff also claims that Defendant was unjustly enriched by his tuition payment because it failed to grade him fairly and give him an education in return for that tuition. To establish unjust enrichment, Plaintiff must show that: (1) one party conferred a benefit to the other; (2) the party receiving the benefit had knowledge of that benefit; and (3) the party receiving the benefit accepted or retained the benefit

under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Cox v. O'Brien*, 150 Wn. App. 24, 37 (2009). The parties do not dispute the existence of the first two elements of this claim. Plaintiff conferred a benefit to Defendant in the form of his tuition payment, and Defendant was aware of this benefit. At issue is whether it is inequitable for Defendant to retain that tuition payment because of Defendant's alleged discriminatory conduct and because Plaintiff alleges that he did not receive that education.

Plaintiff signed two Enrollment Agreements during his tenure at Pima. These Enrollment Agreements state Defendant's refund policy. According to this policy, Defendant retains 100% of enrollment period charges if Plaintiff withdraws or is terminated from the program during "greater than 50% through or through the remainder of the enrollment period." Dkt. # 23 Exs. C, J. Defendant argues that Plaintiff was properly terminated from the OTA program in accordance with its policies and procedures. Plaintiff does not specifically allege that the grades leading to his first termination were incorrect and it is undisputed that Plaintiff received at least four failing grades. Plaintiff provides no factual basis for his argument that this policy should not apply to him because he does not believe he should have been terminated. While Plaintiff did not receive his degree, he did complete the majority of the OTW program and he did receive an education. As there is no issue of material fact as to whether Defendant was unjustly enriched by Plaintiff's tuition payments, Defendant's Motion for Summary Judgment as to Plaintiff's unjust enrichment claim is **GRANTED.**

E. Consumer Protection Act

To establish a claim under the Washington Consumer Protection Act ("CPA"), Plaintiff must show: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) affecting the public interest; (4) injury to a person's business or property; and (5) causation. *Panag v. Farmers Ins. Co. of Washington*, 166 Wash. 2d

27, 37, 204 P.3d 885, 889 (2009). Plaintiff alleges that Defendant's marketing material is deceptive because it promised that Pima would provide Defendant with "high quality services" but failed to do so and that the material would be misleading to others in addition to Defendant. While Plaintiff alleges that Defendant treated him unfairly and did not provide him with the advertised services, he does not allege, and provides no evidence that Defendant failed to provide these services to other students. For Defendant's marketing material to be deceptive to other people besides Plaintiff, Plaintiff would need to show that actions complained of had any potential for repetition. *See Sato v. Century 21 Ocean Shores Real Estate*, 101 Wn.2d 599, 603 (1984). Plaintiff argues in his Response that "a violation of the Washington Law Against Discrimination occurring in the course of trade or commerce that caused injury to business or property is also a violation of the CPA." Plaintiff cites to no legal authority that supports this proposition and offers no factual support or further explanation for his statements. Defendant's Motion for Summary Judgment as to Plaintiff's CPA claim is **GRANTED.**

F. <u>Negligence</u>

To establish a cause of action for negligence, Plaintiff must demonstrate that: (1) Defendant owed Plaintiff a duty; (2) Defendant breached that duty; (3) damages resulted; and (4) Defendant's breach proximately caused the damages. *Tincani v. Inland Empire Zoological Soc'y*, 124 Wash.2d 121, 127-28 (1994). The threshold determination of whether the defendant owes a duty to the plaintiff is a question of law. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wash.2d 217, 220 (1991). Plaintiff argues that Defendant breached its duty to protect him from "reasonably anticipated or foreseeable dangers/harms" by failing to design and implement effective anti-harassment policies and practices, to discipline staff that engage in harassment or discrimination, to properly investigate Plaintiff's claims, and to "put an end to the hostile educational environment and harassment of Plaintiff." Dkt. # 1.

Plaintiff provides no further explanation or factual support for his argument that Defendant breached its duty to Plaintiff. While Plaintiff alleges in his Complaint that Defendant failed to design and implement effective anti-harassment policies and practices, Plaintiff provides no evidence regarding Defendant's current anti-harassment policies and practices, if any, no evidence regarding the effectiveness of those policies and practices, and no explanation how Defendant's alleged failure to design effective anti-harassment policies constituted a breach of Defendant's duty to Plaintiff. Plaintiff also provides no factual basis for his claim that Defendant did not properly investigate his claims. Plaintiff notes that Mr. Penerio did not follow-up with Plaintiff after their December 2014 meeting, but does not provide any evidence that Mr. Penerio did not actually investigate Plaintiff's claims, or that Dr. Corsilles-Sy or Plaintiff's other instructors were not properly disciplined for engaging in alleged harassment. Plaintiff does not provide sufficient factual basis for his claim of negligence. Therefore, Defendant's Motion for Summary Judgment of Plaintiff's negligence claim is **GRANTED.**

G. <u>Outrage and Negligent or Intentional Infliction of Emotional Distress</u>

Under Washington law, in order to state a claim of outrage, Plaintiff must show extreme and outrageous conduct and intentional or reckless infliction of emotional distress. *Stoot v. City of Everett*, 582 F.3d 910, 930 (9th Cir. 2009). Plaintiff must demonstrate conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Jensen v. GTE Nw., Inc.*, 7 F. App'x 778 (9th Cir. 2001). None of the factual allegations brought by Plaintiff rise to the level of "extreme and outrageous conduct" or "intentional or reckless infliction of emotional distress". Plaintiff makes a cursory mention in his Complaint that Defendant's conduct caused severe emotional distress that manifested in "physical problems" but does not detail what these problems were, any details regarding his emotional distress, or how that

emotional distress led to physical problems.  Dkt. # 1 ¶ 4.23.

Plaintiff's claim of negligent infliction of emotional distress also fails.  "A plaintiff may recover on a claim for negligent infliction of emotional distress by proving negligent conduct, which consists of the familiar elements of duty, breach, proximate cause, and harm, as well as that the resulting emotional distress is (1) within the scope of foreseeable harm of the negligent conduct, (2) a reasonable reaction given the circumstances, and (3) manifest by objective symptomatology."  *Vargas Ramirez v. United States*, 93 F. Supp. 3d 1207, 1235–36 (W.D. Wash. 2015); *Kumar v. Gate Gourmet Inc.*, 180 Wash.2d 481, 325 P.3d 193, 205 (2014).  As with Plaintiff's claims of intentional infliction of emotional distress and outrage, Plaintiff alleges that he suffered from physical manifestations of emotional distress.  Plaintiff provides no evidence of "objective symptomology".  Even viewing the evidence in a light most favorable to Plaintiff, there is no evidence to support Plaintiff's claims and Plaintiff fails to show that there is a question of material fact.  Thus, Defendant's Motion for Summary Judgment as to Plaintiff's claims of outrage, intentional infliction of emotional distress, and negligent infliction of emotional distress is **GRANTED**.

H.  Equal Protection Claims

Plaintiff's § 1983 claims alleging violations of equal protection and Title VI require similar proofs.  Plaintiff must show that actions of Defendant had a discriminatory impact, and that Defendant acted with an intent or purpose to discriminate based upon Plaintiff's membership in a protected class.  *Lee v. City of Los Angeles,* 250 F.3d 668, 686–87 (9th Cir. 2001); *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009).  Plaintiff alleges that Defendant demonstrated a "deliberate indifference to the racial discrimination they have perpetuated through their actions," and that he was denied the right to equal opportunity to participate in his education due to racial discrimination.

Plaintiff failed to respond to Defendant's Motion for summary judgment of this claim. Plaintiff's Complaint provides no factual allegations in support of this claim. Instead, Plaintiff makes conclusory statements that Defendant violated his "constitutionally protected rights to receive the same treatment as other races" and "demonstrated a deliberate indifference to the racial discrimination they have perpetuated through their actions". Plaintiff provides no arguments or evidence to support these allegations and the Court will not "scour the record in search of a genuine issue of triable fact." *Keenan*, 91 F.3d at 1279 (9th Cir. 1996); *see also, White v. McDonnel-Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the nonmoving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). Plaintiff fails to establish a triable issue of fact with regards to his equal protection claim, thus Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's equal protection claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment with regards to Plaintiff's claims of federal and state race discrimination claims, equal protection, breach of contract, unjust enrichment, consumer protection, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and outrage. Defendant's Motion is **DENIED** as to Plaintiff's federal and state retaliation claims. Dkt. # 22.

Dated this 19th day of October, 2017.


_____
The Honorable Richard A. Jones
United States District Judge